UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOB MARINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:17-CV-2154-SPM |
| | ) |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations, Social Security Administration (the "Commissioner"), finding that Plaintiff Jacob Marino ("Plaintiff") was no longer disabled under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I. FACTUAL BACKGROUND

Plaintiff has bipolar disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and generalized anxiety disorder. (Tr. 477, 539). At the hearing before the Administrative Law Judge ("ALJ") held on November 24, 2015, Plaintiff testified as follows. He has a high school education and lives with his mother. (Tr. 25, 28). He does not do the household chores, because he does not

1

remember to do them. (Tr. 25-26). He cleans his room perhaps once every six months. (Tr. 30). He plays video games for about twenty minutes at a time and then loses focus and starts "thinking about everything else." (Tr. 26). He has a driver's license and drives to St. Charles, Chesterfield, Arnold, or other places. (Tr. 26). Plaintiff has friends that he goes around with when they are not busy, and he tries to help a friend at a retail store. (Tr. 29). When he goes out with friends, it does not last long—perhaps an hour—before he cannot do it anymore. (Tr. 30). He travels to card game tournaments with friends, during which he sits for twenty minutes playing and then has an hour and a half in between to "get out of [his] manic stuff." (Tr. 30). He pays his bills every month, but he is typically late. (Tr. 29).

Plaintiff is not in any kind of counseling but is looking for a counselor. (Tr. 33). Plaintiff testified that when his medicines work, he has significant side effects, normally including weight gain and sleepiness. (Tr. 27). When he is put on medications without the side effects, they do not work. (Tr. 27). He is often trying new medications. (Tr. 28).

Plaintiff worked with his mother at a catering company once or twice a month for a few months. (Tr. 33). Two bartenders he knew helped him and covered for him when he had problems. (Tr. 33). He is not in any kind of work program because it is hard for him to be around new people. (Tr. 34).

With regard to Plaintiff's medical records and work history records, the Court accepts the facts as stated in the parties' respective statements of facts. The Court will discuss the specific facts relevant to the parties' arguments in its discussion below.

## II. PROCEDURAL BACKGROUND

In a decision dated May 5, 2010, Plaintiff was found disabled as of June 23, 2008. (Tr. 43). On December 30, 2014, the Commissioner determined that Plaintiff's health had improved in

December 2014 and that he was no longer disabled as of December 2014. (Tr. 61-64). On April 14, 2015, a state agency disability hearing officer upheld that determination. (Tr. 78-80). On April 21, 2015, Plaintiff filed a Request for Hearing by an ALJ. (Tr. 90-93). After a hearing, the ALJ issued an unfavorable decision dated May 31, 2016. (Tr. 40-60). On June 16, 2016, Plaintiff filed a Request for Review of Hearing Decision/Order with the Social Security Administration's Appeals Council. (Tr. 127-29). On May 30, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

In this case, Plaintiff was determined to be disabled as of June 23, 2008. (Tr. 43). However, under the relevant regulations, a claimant's "continued entitlement to . . . benefits must be reviewed

periodically." 20 C.F.R. § 416.994(a).[1] "The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved." *Bennett v. Colvin*, 174 F. Supp. 3d 1031, 1037 (E.D. Mo. 2016). "When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where [s]he is able to perform substantial gainful activity." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) (citing 42 U.S.C. § 423(f)(1)). "This 'medical improvement' standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Id.*

To evaluate a claimant's continued entitlement to benefits, the Commissioner must follow a process involving up to eight steps. 20 C.F.R. § 416.994(b)(5). Those steps are as follows:

> (i) Step 1. Do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter? If you do, your disability will be found to continue.

> (ii) Step 2. If you do not, has there been medical improvement as defined in paragraph (b)(1)(i) of this section?[2] If there has been medical improvement as shown by a decrease in medical severity, see step 3 in paragraph (b)(5)(iii) of this section. If there has been no decrease in medical severity, there has been no medical improvement. (See step 4 in paragraph (b)(5)(iv) of this section.)

> (iii) Step 3. If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1)(i) through (b)(1)(iv) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step 4 in paragraph (b)(5)(iv) of this section.

---

[1] Throughout this opinion, the Court's references to regulations will be to the version of the regulations that was effective prior to March 27, 2017.

[2] "Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s)." 20 C.F.R. § 416.994(b)(1)(i).

If medical improvement is related to your ability to do work, see step 5 in paragraph (b)(5)(v) of this section.

(iv) Step 4. If we found at step 2 in paragraph (b)(5)(ii) of this section that there has been no medical improvement or if we found at step 3 in paragraph (b)(5)(iii) of this section that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (b)(3) and (b)(4) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step 5 in paragraph (b)(5)(v) of this section. If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(v) Step 5. If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 416.921). This determination will consider all your current impairments and the impact of the combination of these impairments on your ability to function. If the residual functional capacity assessment in step 3 in paragraph (b)(5)(iii) of this section shows significant limitation of your ability to do basic work activities, see step 6 in paragraph (b)(5)(vi) of this section. When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(vi) Step 6. If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 416.960. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(vii) Step 7. If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (b)(5)(vi) of this section and your age, education, and past work experience (see paragraph (b)(5)(viii) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

(viii) Step 8. We may proceed to the final step, described in paragraph (b)(5)(vii) of this section, if the evidence in your file about your past relevant work is not sufficient for us to make a finding under paragraph (b)(5)(vi) of this section about whether you can perform your past relevant work. If we find that you can adjust to other work based solely on your age, education, and residual functional capacity, we will find that you are no longer disabled, and we will not make a finding about whether you can do your past relevant work under paragraph (b)(5)(vi) of this section. If we find that you may be unable to adjust to other work or if § 416.962

may apply, we will assess your claim under paragraph (b)(5)(vi) of this section and make a finding about whether you can perform your past relevant work.

20 C.F.R. § 416.994(b)(5)(i)-(viii).

### IV. THE ALJ'S DECISION

Applying the foregoing steps, the ALJ made the following findings. At Step 1, the ALJ found that since December 15, 2014, Plaintiff had not had an impairment or combination of impairments that meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 45). At Step 2, the ALJ found that medical improvement had occurred as of December 15, 2014. (Tr. 48). At Step 3, the ALJ made a residual functional capacity ("RFC") finding and found that Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC. (Tr. 48-53). At Step 5, the ALJ found that beginning December 15, 2014, Plaintiff's impairments continued to be severe. (Tr. 53). At Step 6, the ALJ found that Plaintiff had no past relevant work. (Tr. 54). At Step 7, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs existing in the national economy that Plaintiff could perform, including dishwasher, hand packer, and cleaner. (Tr. 54-55). The ALJ concluded that Plaintiff's disability ended on December 15, 2014, and that Plaintiff had not become disabled again since that date. (Tr. 55).

### V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ failed to properly evaluate the opinions of Plaintiff's treating physician, Dr. Trail, and (2) that the ALJ did not perform a proper analysis of the credibility of Plaintiff's subjective complaints.

#### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C.

§§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Evaluation of the Opinions of Plaintiff's Treating Physician

Plaintiff's first argument is that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Trail, and erred by giving them "little weight." (Tr. 52). On June 3, 2015, Dr. Trail wrote a brief letter stating that Plaintiff's diagnoses were bipolar disorder and ADHD; that Plaintiff's "condition is chronic and will cause difficulties for his entire life"; that "[m]ultiple medications have been tried and have been partially effective," and that "[h]is symptoms make it very difficult for him to remain gainfully employed on a full time basis." (Tr. 477). On November 20, 2015, Dr. Trail wrote another letter stating that Plaintiff's current diagnoses were bipolar disorder, ADHD, and generalized anxiety disorder and that his current medications were Adderall

7

and Lamictal. He stated that he had been treating Plaintiff since Plaintiff was six years old. He stated that despite many medications trials and periodic counseling, Plaintiff has continued to struggle; that side effects of medications have limited their effectiveness through the years; that many of the stimulants have made his mood lability worse; that nearly all of the mood stabilizers have caused significant weight gain to the point where Plaintiff is morbidly obese; and that sedation from some medications had also been a limitation. He stated that although Plaintiff's diagnosis included impulsive decision making and being easily frustrated, which periodically has led him to making the poor choice of briefly stopping medications, he has always been compliant with appointments and has never refused treatment. He stated that when Plaintiff is doing well, he has had brief periods of time in which he could be employed, but that his mood volatility, the limited effectiveness of his medications, and his struggles with social skills had kept him from being gainfully employed on a consistent basis. He noted that Plaintiff had depended on his mother's support to take care of his activities of daily living. Dr. Trail concluded by opining that Plaintiff's "limitations due to his medical diagnosis currently make it impossible for him to live independently and maintain a consistent income for at least the next several years." (Tr. 539).

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 416.927(c)(2).[3] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating

---

[3] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated.

8

physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff*, 421 F.3d at 790 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may also "discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 416.927(c)(2)-(6). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir.2007)). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be

---

*See* 20 C.F.R. § 416.920c(a). Throughout this opinion, the Court will refer to the version of the regulations that applies to claims filed before March 27, 2017.

disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

After review of the ALJ's decision and the record as a whole, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for her decision to discount Dr. Trail's opinion. The ALJ discussed Dr. Trail's opinions and gave them "little weight." (Tr. 52). The ALJ properly discounted Dr. Trail's opinions regarding Plaintiff's ability to maintain employment, noting that an opinion that a person is unable to work is an opinion on an issue reserved to the Commissioner. The Eighth Circuit has repeatedly held that a treating physician's opinion that a claimant is "disabled" or "unable to work" is not a "medical opinion" that is entitled to credit under the regulations. *See Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely 'opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'") (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir. 2002)). *Accord Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

With regard to Dr. Trail's opinions regarding Plaintiff's struggles with social skills, the ALJ reasonably found those opinions inconsistent with the record. As the ALJ noted, by Plaintiff's own account, Plaintiff engages in significant social activities. In his Function Report, he reported that he spends time with others and reported that he does not have any problems getting along with family, friends, neighbors, or others. (Tr. 200-01). He noted that he spends his days helping a friend at a retail store, socializing, and playing card games. (Tr. 197). He also reported during his psychological evaluation that he plays pool with friends and is heavily into card games. (Tr. 442). He testified that he travels with friends to attend card tournaments (Tr. 30). The ALJ reasonably

found this evidence inconsistent with Dr. Trail's opinion that Plaintiff has "struggles with social skills" so severe that he cannot work.

With regard to Dr. Trail's opinion that Plaintiff is reliant on his mother's support to take care of his daily activities, the ALJ reasonably found that opinion inconsistent with the record, which showed little or no limitations in activities of daily living. (Tr. 52). In Plaintiff's Function Report, Plaintiff reported that he prepares his own meals; that he is able to take out the trash, clean his room, and do laundry (though he does need reminders); that he goes out alone to walk and drive a car; that he shops in stores and by computer; that he pays bills and handles a savings account; and that he plays card games and videogames. (Tr. 197-200). Similarly, Plaintiff reported to his psychological examiner that he pays his own bills and helps with grocery shopping; that he is heavily into card games; that he travels to various card game tournaments (with his most recent one being in Chicago, where he placed 6th out of 423 players); and that he is physically able to care for his personal hygienic needs independently. (Tr. 442). The ALJ reasonably found this evidence inconsistent with Dr. Trail's opinion that Plaintiff is dependent on his mother to help him take care of his daily activities. *See Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (ALJ properly considered the claimant's reported daily activities in discounting a physician's opinions).

Moreover, a review of Dr. Trail's treatment notes shows that they contain little support for his opinions. As the ALJ discussed, although Plaintiff's mental status examinations sometimes showed that he was depressed or irritable, he consistently had an age-appropriate activity level; a normal tone, volume, and rate of speech; a full range of affect; a goal-directed and logical thought process with no flight of ideas or looseness of association; no delusions, hallucinations, or suicidal or homicidal thoughts; and fair insight and judgment. (Tr. 302-03, 305, 432, 435, 510, 512-13, 516, 519.) Dr. Trail consistently found that Plaintiff had a Global Assessment of Functioning

("GAF") score of 51-60, indicating only moderate symptoms.[4] (Tr. 303, 306, 433, 436, 510, 513, 516, 519). *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (inconsistency between treating physician's treatment records and his functional assessment provides good reason for ALJ to discount physician's opinion); *Goff*, 421 F.3d at 791 (finding the ALJ properly discounted a treating psychiatrist's opinion that the claimant had extreme mental limitations where the same psychiatrist had assigned the claimant a GAF score of 58, indicating only moderate symptoms). Similarly, the consultative examiner found that although Plaintiff had a flat affect; a tired, depressed, and sleepy mood; and a rate of speech that was a bit slow, he was fairly groomed; had a cooperative attitude; made sufficient eye contact; had coherent, relevant, and logical speech; had normal thought processes; had appropriate memory; had appropriate insight and judgment; had average intelligence; and had intact concentration; and had a GAF score of 60. (Tr. 441-43). Additionally, treatment notes from other providers during the relevant time frame indicate that Plaintiff had a normal or appropriate mood and affect. (Tr. 485, 522). Although these records support the existence of some mental limitations, they do not necessarily support Dr. Trail's opinion that Plaintiff had limitations greater than those reflected in the RFC.

The undersigned notes that although the ALJ did not explicitly discuss all of the factors listed in § 416.927(c) in evaluating Dr. Trail's opinion, she was not required to do so. *See Nishke v. Astrue*, 878 F. Supp. 2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform a factor-by-factor

---

[4] A GAF score is based on "the clinician's judgment of the individual's overall level of functioning." *Hudson v. Barnhart*, 345 F.3d 661, 662 n.3 (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) ("*DSM-IV-TR*"). "GAF scores of 51-60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* (quoting *DSM-IV-TR* 34).

analysis of the 20 C.F.R. § 416.927(c) factors was not erroneous where the ALJ "explained his rationale in a manner that allowed the [court] to follow his line of reasoning"); *Derda v. Astrue*, No. 4:09–CV–01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) ("While an ALJ must consider all of the factors set forth in 20 C.F.R. § 404.1527(d), he need not explicitly address each of the factors"). The ALJ cited 20 C.F.R. § 416.927 in her discussion and discussed several of the factors in her decision. (Tr. 49-52). The ALJ also "explained [her] rationale in a manner that allows the [Court] to follow [her] line of reasoning" *Nishke*, 878 F. Supp. 2d at 984. No more was required to comply with the relevant regulations.

For all of the above reasons, the Court finds that the ALJ did not err in her assessment of Dr. Trail's opinion. The ALJ's decision makes clear that she considered all of the relevant evidence in assessing Dr. Trail's opinion, and it is not the role of this Court to reweigh that evidence. The ALJ's finding was supported by substantial evidence, and the Court cannot say that this decision was outside the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

### C. The ALJ's Evaluation Plaintiff's Subjective Complaints

Plaintiff's second argument is that the ALJ erred in evaluating the credibility of Plaintiff's subjective complaints.[5] Specifically, Plaintiff suggests that the ALJ gave insufficient weight to Plaintiff's testimony that he cannot work because he cannot sustain attention and concentration, because of his mood swings, because of his poor memory and need for reminders, and because at times he cannot function. When evaluating a plaintiff's subjective complaints, the ALJ must

---

[5] The Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." However, the factors to be considered remain the same under the new ruling. *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 416.929.

13

consider several factors: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of [the symptoms]; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984)). The ALJ need not explicitly discuss each factor. *Moore*, 572 F.3d at 524 (citing *Goff,* 421 F.3d at 791). It is sufficient if the ALJ "'acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Id.* The ALJ may not discount subjective complaints solely because they are not fully supported by the medical evidence, but such complaints may be discounted if they are inconsistent with the record as a whole. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

After review of the record, the Court finds that the ALJ conducted a proper analysis of Plaintiff's subjective complaints, supported by good reasons and substantial evidence. As a preliminary matter, the Court notes that the ALJ did not entirely discount Plaintiff's complaints of mental impairments, including focus and concentration problems. She limited Plaintiff to routine, repetitive tasks with only occasional changes in work setting and decision making, and she found that Plaintiff should have only end-of-day workday measurements and should not be in an assembly line or do similar work. However, the ALJ reasonably gave only some weight to Plaintiff's complaints after consideration of several of the relevant factors. (Tr. 49-53). First, as discussed above, the ALJ considered objective medical evidence showing generally normal or mild examination findings, including mental status examinations sometimes showing that although he was depressed or irritable, he consistently had an age-appropriate activity level; a normal tone, volume, and rate of speech; a full range of affect; a goal-directed and logical thought process with

14

no flight of ideas or looseness of association; no delusions, hallucinations, or suicidal or homicidal thoughts; and fair insight and judgment (Tr. 49-51, 302-03, 305, 432, 435, 441-43, 485, 510, 512-13, 516, 519, 522). The ALJ also considered that Plaintiff had GAF score findings consistently indicating only moderate symptoms (Tr. 49-51, 303, 306, 433, 436, 443, 510, 513, 516, 519). Although Plaintiff complained of concentration problems, difficulty focusing, and memory problems, the medical record does not appear to support those complaints. To the contrary, as the ALJ noted, the consultative examiner found that Plaintiff had intact concentration and appropriate memory, as evidenced by the ability to recall and recite up to six digits, to count backward in serials of three, and to remember facts from current events and from history. (Tr. 47, 442). It was appropriate for the ALJ to consider these findings in giving only some weight to Plaintiff's complaints. *See Halverson*, 600 F.3d at 932-33 (finding that the ALJ reasonably discounted allegations of disability based in part on unremarkable examination findings).

Second, with regard to Plaintiff's daily activities, the ALJ reasonably found that Plaintiff's reported ability to perform extensive daily activities was inconsistent with his subjective complaints. As discussed above, Plaintiff reported that he spends time with others and that he does not have any problems getting along with family, friends, neighbors, or others (Tr. 200-01); that he spends his days helping a friend at a retail store, socializing, and playing card games (Tr. 197); that he plays pool with friends, is heavily into card games, and recently went to a game in Chicago where he placed 6th out of 423 players (Tr. 442); that he travels with friends to attend card tournaments (Tr. 30); that he prepares his own meals; that he is able to take out the trash, clean his room, and do laundry (though he does need reminders) (Tr. 198); that he goes out alone to walk and drive a car; that he shops in stores and by computer; that he pays bills and handles a savings account; and that he plays card games and videogames (Tr. 197-99); and that he is physically able

15

to care for his personal hygienic needs independently. (Tr. 442). The ALJ reasonably found this evidence undermined Plaintiff's suggestion that he is so unable to focus and concentrate that he could not perform even routine, repetitive tasks involving only occasional changes in the work setting.

Third, the ALJ reasonably considered evidence of Plaintiff's ability to perform part-time work. Specifically, the ALJ considered the third-party statement of his former supervisor indicating that Plaintiff was actively employed at a catering company as a seasonal, part-time bar back between August 2013 and April 2014, in a venue with a set routine with less stress and multi-tasking than some other catering venues, and that Plaintiff's employment remained opened and the company would consider him if and when the need arose. (Tr. 256). A claimant's ability to perform part-time work may be considered as part of the credibility analysis. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work . . . were inconsistent with her claim of disabling pain."). *See also* 20 C.F.R. § 416.971 (the work that a claimant "[has] done during any period in which [he] believe[s] [he is] disabled may show that [he is] able to work at the substantial gainful activity level."). Plaintiff's ability to work (even part-time, and even in an environment with a set routine), is to some extent inconsistent with his allegations of disabling mental impairments.

Plaintiff suggests that the ALJ relied too heavily on Plaintiff's reported daily activities, and he also suggests that the ALJ should have given more consideration to the fact that Plaintiff gave varying reports of his daily activities, indicating that they varied from month to month and he did not participate in all of them consistently. The Court finds no error. The ALJ did not rely entirely on Plaintiff's reported daily activities, but rather considered them in conjunction with the record as a whole, including Plaintiff's consistently moderate GAF scores, the findings of the consultative

examiner, Plaintiff's mental status examination results, and Plaintiff's work history. It was not unreasonable for the ALJ to consider Plaintiff's reported ability to participate in various daily activities along with other relevant factors in assessing the credibility of his allegations of disabling mental conditions.

In sum, the Court finds that the ALJ conducted an express credibility determination, considered several of the relevant factors, and gave good reasons for finding Plaintiff's subjective complaints not entirely credible. The Court will therefore defer to that analysis. *See Renstrom v. Astrue*, 680 F.3d at 1065 ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination.") (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. A separate judgment will be filed on the same date as this Memorandum Opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2018.